Request of Governor and Council
No. 6737

OPINION OF THE JUSTICES

September 25, 1973

The following resolution was adopted by the Governor and Council September 12, 1973, and filed in this court on September 17, 1973:

"WHEREAS: I. In early July of this year, heavy rains resulted in the deposit of debris in certain rivers and streams of the State and damage to dams, creating danger of further flooding if not corrected prior to the next occasion of heavy accumulation of water;

"II. Certain municipalities without the capability to perform the necessary work of removing such debris or repairing such dams within the municipalities desire the State to perform that work;

"III. It appears that no existing appropriations in the State budget, and no means of increasing any existing appropriations, would suffice to authorize the State to undertake and to bear the cost of such work, which is initially estimated to be approximately one million dollars.

"IV. Officials of the national government have advised that

applicable federal law providing for relief to states suffering from natural disasters could provide reimbursement to the state for the cost of performing such necessary work, if found to be eligible for such relief, and would authorize officials of the national government to pay to the State in advance of undertaking such work an amount equal to as much as one half any estimated final reimbursement for the cost of performing such work;

"V. RSA 124:1 authorizes the Governor, with approval of the Council, to apply for aid which the national government has authorized to be given to states for public works or any purpose to relieve distress; RSA 124:2 provides that the faith and credit of the State are pledged to provide by appropriation or otherwise for meeting State obligations incident to the acceptance of such federal aid;

"VI. The Governor and Council desire to act under the authority of RSA 124:1 and 2 for the purposes of authorizing such necessary work and obtaining federal aid described in IV, above, to finance the cost thereof, but are not certain that RSA 124:2 provides such authority;

"VII. Such federal aid may be obtained only to finance such work regarded by the national government to be of an emergency nature as will be completed by November 11, 1973;

"VIII. The coming of winter necessitates prompt action to do such necessary work, however authorized or funded;

"IX. These circumstances constitute a solemn occasion in which the Governor and Council have before them important questions of law;

"NOW THEREFORE, be it resolved that the Honorable Justices of the Supreme Court be respectfully requested to give their opinions on the following questions of law:

"1. May the Governor, with advice of the Council, under RSA 124:1, apply for such reimbursement, and advance payments thereof, for the purpose of reimbursing the State for the cost of performing such necessary work?

"2. If the answer to Question 1 is yes, would acceptance and retention by the State of the advance payment described in IV, above, give rise to an obligation within the meaning of RSA 124:2, such that the faith and credit of the State

would be pledged to meet obligations incurred to finance the cost of performing all such necessary work?

"3. If the answer to Question 2 is yes, in the absence of Legislative appropriation but upon receipt of such advance payment, and in reliance upon the reasonable expectation that full reimbursement would be made as described in IV, above, would the Governor and Council be authorized to contract in the name of the State to cause such work to be done?

"4. If the answer to Question 3 is yes, would any portion of expenses incurred in performing such work under such contracts for which such federal reimbursement was ultimately found unavailable, but incurred in the expectation that such reimbursement would be available, be a valid charge against the credit of the State?

"5. Would the Treasurer be authorized with approval of the Governor and Council, under RSA 124:2, to issue notes or bonds pledging the faith and credit of the State to finance such work prior to such federal reimbursement?

"6. If the answer to Question 4 is yes, would the Treasurer be authorized, with the approval of the Governor and Council, under RSA 124:2, to issue notes or bonds pledging the faith and credit of the State to finance the cost of such portion of expenses until payment thereof was otherwise provided, or would the Treasurer alternately be authorized upon warrant to make payment of such expenses or retire such obligations from monies in the General Fund not otherwise appropriated?

"Be it Further Resolved, that the Secretary of State transmit seven copies of this resolution to the Clerk of the Supreme Court for consideration by the Court."

The following answer was returned:

To His Excellency the Governor and the Honorable Council:

The undersigned justices of the supreme court give the following answers to the questions contained in your resolution dated September 17, 1973, and filed in the supreme court on the same date.

Your questions are directed to the authority granted by RSA 124:1 and 2. Section 1 in material part reads as follows:

"124:1 Authority for Seeking Aid. The governor, with the approval of the council, is authorized to apply for financial or any other aid which the United States government has authorized or may authorize to be given to the several states for emergency industrial or unemployment relief, for public works and highway construction, for the creation of employment agencies, or for any other purpose intended to relieve distress . . .. The state treasurer is directed to receive all money so granted by the United States, or by any agency thereof, to the state and to hold all such funds separate from all other funds of the state. Such funds shall be disbursed by the treasurer upon warrants drawn by the governor for the purposes for which such relief or aid is granted."

This section empowers the Governor with the approval of the Council to apply for financial aid which may be authorized to be granted to the State by the federal government for enumerated purposes and "for any other purpose intended to relieve distress". Your resolution finds that heavy rains in July of this year caused flooding and "deposit of debris in certain rivers and streams . . . and damage to dams, creating danger of further flooding if not corrected . . . ." and that "[t]he coming of winter necessitates prompt action . . . ." Your resolution also states that federal officials have advised that financial aid is or may be available from the federal government to meet the necessary cost of such corrective work. It is our opinion that authority to apply for such aid is included within the scope of RSA 124:1 and the answer to your first question is "Yes".

RSA 124:2 reads as follows: "124:2 Faith and Credit Pledged. The faith and credit of the state are pledged to make adequate provision, from time to time, by appropriation or otherwise, to meet all obligations of the state incident to the acceptance of federal aid under the provisions of any act referred to in the preceding sections and the governor and council are authorized to issue all necessary documentary evidence of such faith and credit."

Whenever the Governor and Council accept federal aid authorized by section 1, the faith and credit of the State

have been pledged by the legislature by section 2 to meet all of the State's obligations incident to the acceptance of such aid. The obligation of the State incident to the acceptance of the aid referred to in your resolution is to have the necessary work performed, and to do this the State must incur the expense of performing such work. This expense is incident to the acceptance of the aid and the credit of the State is therefore pledged to meet those obligations. Although there may not be an advance appropriation by the legislature, section 2 provides an "equivalent direction for payment by the legislature" (*State v. Kimball,* 96 N.H. 377, 380, 77 A.2d 115, 119 (1950)) of obligations incurred as an incident to the acceptance of the federal aid. That the use of State funds and the incurring of obligations in advance of receipt of federal funds authorized by section 1 is contemplated is indicated by the provisions of section 9 which requires that the notification and reports mandated by sections 7 and 8 specify the amount and source of State funds required for the program. The answer to questions 2, 3 and 4 are "Yes", the obligations incurred in expectation of reimbursement would be incident to the acceptance of the federal funds and the credit of the State would be pledged to meet those obligations.

Section 2 not only pledges the faith and credit of the State to meet the obligations incident to the acceptance of the federal funds by appropriation "or otherwise" but also authorizes the Governor and Council to "issue all necessary documentary evidence of such faith and credit." *See also* RSA 6:13, *as amended,* Laws 1973, 144:1. This is sufficient authority for the issuance of notes or bonds and the answer to question 5 is "Yes".

In view of the answers to the previous questions, the answer to question 6 is also "Yes", the treasurer is authorized with the approval of the Governor and Council to either issue notes or bonds or in the alternative to make payment from monies in the general fund not otherwise appropriated.

The authority conferred by the legislature upon the Governor and Council under RSA ch. 124 as amended empowers them to take appropriate action in cases of true emergency

where federal funds are available, and this is in compliance with N.H. CONST. pt. II, art. 56.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

James H. Hayes, Councilor for the Second District, Concord, filed a memorandum.

Henry C. Newell, Representative from Merrimack District No. 16, for negative answer to questions 1 and 5.

Warren B. Rudman, attorney general, by Roger G. Burlingame, attorney, for affirmative answers.